**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**EDUARDO TARAJANO, SR.,
Individually, and as Trustee of the
CAROLINA TARAJANO TRUST,**

                **CASE NO.:**

     **Plaintiff,**

**v.**

**MERRILL LYNCH, PIERCE, FENNER
& SMITH INCORPORATED, a foreign
corporation,**

     **Defendant.**

_____/

<u>**DEFENDANT'S NOTICE OF REMOVAL**</u>

# ***<u>EXHIBIT A</u>***



# PROCESS SERVER DELIVERY DETAILS

**Date:**                        Tue, Sep 29, 2020

**Server Name:**            Fred Humphries

| | |
|---|---|
| Entity Served | MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED |
| Agent Name | CT CORPORATION SYSTEM |
| Case Number | 2020-019856-CA-01 |
| Jurisdiction | FL |



Filing # 113712748 E-Filed 09/21/2020 04:48:14 PM

FH824
9-28-20
10:35A

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO: 2020-019856-CA-01

EDUARDO TARAJANO, SR.,
individually, and as Trustee of the
CAROLINA TARAJANO TRUST,

     Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER &
SMITH INCORPORATED, a foreign
corporation,

     Defendant.

_____/

## SUMMONS

THE STATE OF FLORIDA: To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on defendant: **Merrill Lynch, Pierce, Fenner & Smith Incorporated.**, c/o Registered CT Corporation System, 1200 S. Pine Island Road, Plantation, Fl 33324

Each defendant is required to serve written defenses to the complaint or petition on Eric M. Sodhi, Esq., plaintiff's attorney, whose address is 3050 Biscayne Blvd., Ste. 904, Miami, FL 33137 (eric@sodhispoont.com; 305-907-7573), within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on _____9/23/2020_____

HARVEY RUVIN
As Clerk of the Court

By _____ 309877
As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

EDUARDO TARAJANO, SR.,
individually, and as Trustee of the
CAROLINA TARAJANO TRUST,

        Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER &
SMITH INCORPORATED, a foreign
corporation,

        Defendant.

CASE NO: _____

_____ /

## COMPLAINT

Plaintiff, EDUARO TARAJANO, SR., individually, and as Settlor/Trustee of the CAROLINA TARAJANO TRUST ("Plaintiff" or "Mr. Tarajano"), hereby sues Defendant, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, a foreign corporation ("Merrill Lynch"); and alleges as follows:

### INTRODUCTION

1.     This case involves the malfeasance of Merrill Lynch in the handling and management of Plaintiffs' accounts. Plaintiffs, an elderly man who is now 80 years old and his elderly wife who now suffers from Alzheimer's disease[1], immigrated to the United States from Venezuela in the early 1990's. After working another 10 years, Mr. and Mrs. Tarajano were

---

[1] Mrs. Tarajano's assets were put into a trust in 2003, and as such, it is the Trust, over which her husband is the Trustee, that is the named plaintiff in this case.

1

looking forward to their long-awaited golden years, and the financial security they would enjoy resulting from decades of hard work. Accordingly, they placed their trust into a big-name bank— Merrill Lynch, to professionally manage their money to accommodate their retirement plan. Unfortunately, Merrill Lynch would fail in its obligation to Plaintiffs, and allow their entire life savings to be liquidated and used for the purchase of a failing liquor store in Key Biscayne. In the end, what was initially an impressive portfolio worth in excess of $5 million would be whittled down to nothing, with more than $4.6 million spent on the liquor store—which was sold earlier this year for $585,000.00. Now, rather than enjoy their golden years, Plaintiffs are barely able to scrape buy—forced to sell their entire belongings simply to pay for the modest living expenses.

2. Through this lawsuit, Plaintiffs seek to hold Merrill Lynch accountable for its dereliction of duty and recover some of their hard-earned retirement funds that should have never been liquidated, and should have never been used to buy a failing liquor store. Merrill Lynch's actions in allowing this to occur constitute a breach of its fiduciary duty to Plaintiffs, a breach of its duty to: (i) place Plaintiffs into a suitable investment; (ii) know and understand Plaintiffs' investment time horizon and needs as well as those who are authorized to act on behalf of Plaintiff; and (iii) supervise its agents and employees and ensure that Plaintiffs' investment holdings were not subject to a "selling away," or placed into investments outside of regulatory oversight. Finally, Merrill Lynch's recklessness constitutes a breach of the parties' customer agreements.[2]

## JURISDICTION, PARTIES AND VENUE

3. This is an action within the Court's jurisdiction as it seeks monetary damages in excess of $4,000,000.00.

---

[2] At this time, Plaintiffs cannot locate their customer agreements.

2

4.     Plaintiff, Mr. Tarajano, is a citizen of Florida, who resides in Miami Dade County, Florida and who is married to Carolina Tarajano.

5.     Mr. Tarajano is the sole trustee of the Carolina Tarajano Trust, created May 15, 2003 (the "Trust"), by virtue of the resignation of Mrs. Tarajano as trustee on October 24, 2017, and concurrent acknowledgment of Mr. Tarajano becoming the sole Trustee on said date, pursuant to Subdivision (B) of Article IX, as amended on February 14, 2011 and March 9, 2016.  At all material times hereto, Mr. Tarajano has been the only person authorized to act on behalf of the Carolina Tarajano Trust.

6.     Defendant Merrill Lynch is a foreign corporation, authorized to do business in the State of Florida, and is in fact doing business in Miami-Dade County.

7.     Venue is proper in Miami-Dade County pursuant to Fla. Stat. § 47.051 as Merrill Lynch has an agent or other representative in Miami-Dade County and Miami-Dade County is where the cause of action accrued.

8.     This Court has personal jurisdiction over Merrill Lynch pursuant to Fla. Stat. § 48.193(2) because it is engaged in substantial and not isolated activity within this State.

## GENERAL ALLEGATIONS

9.     Plaintiff, Mr. Tarajano, Sr, is an 80-year-old retired businessman from Venezuela, who enjoyed a distinguished career working in high level positions for an array of multinational corporations such as PepsiCo, amongst others.  Mr. Tarajano was extremely successful, building enough wealth to relocate his family to South Florida from Venezuela in the early 1990's.

10.     Mr. Tarajano's family included his wife Carolina Tarajano ("Mrs. Tarajano"), and their children Mariana T. Tonarely, ("Mariana"), Eduardo Tarajano, Jr. ("Eduardo Jr.") and Carlos

3

Tarajano.  Tragically, Carlos Tarajano passed away in 2004.   Eduardo Jr. was the last to immigrate to the United States, arriving with his wife Adriadne, their daughter, and stepson in early 2015.

11.     In or around 2003, as part of a retirement plan, Mrs. Tarajano created the Trust, funded with the wealth that Mr. Tarajano had earned over the course of his career, and over which Mrs. Tarajano maintained complete control as the Trustee.

12.     The Trust *res* was in addition to other assets the couple had acquired over the years, including securities, real estate, and cash.

13.     Due to Mrs. Tarajano's suffering from Alzheimer's, and Mr. Tarajano's advanced age, this wealth was in large part held in various accounts at Merrill Lynch, which charged and received handsome fees to manage it.   Mr. and Mrs. Tarajano had accepted that Merrill Lynch was going to charge substantial fees for managing these assets, but were ok with it, as they fealt by going to a large multi-national bank such as Merrill Lynch, the would get the best service and advice the investment world has to offer.  Simply put, Mr. and Mrs. Tarajano relied on Merrill Lynch's reputation and expertise to properly manage their money through their retirement.

14.     The Tarajanos' wealth advisor would be Jorge A. Sonville, a senior vice president and international wealth advisor with Merrill's Lynch's New York International Group.   And according to their website, Mr. Sonville's mission is "To take the time, to ask hard, smart questions and to listen carefully, then to understand, in great detail, exactly where your wealth stands today, and where you'd like it to be tomorrow."[3]  Supposedly, this "helps you and your family pursue your personal financial goals while helping manage investment risk."  The website ensures (twice) that clients will be supported by "the global resources of Merrill."

---

[3] https://fa.ml.com/florida/miami/nyig_mia/.

4

15.     By mid-2015, after many years of managing the Tarajanos' finances, Mr. Sonville should have understood their investment needs: to invest in low-risk opportunities that preserved the Tarajanos' wealth and produced a steady stream of income to support them through retirement with the hope of leaving their two surviving children some inheritance.

16.     In or about early 2015, Mr. Sonville presented an investment opportunity to Mr. Tarajano: a liquor store located in Key Biscayne, Florida that was for sale.  A limited liability company, Tavoalex Investment LLC, ("Tavoalex"), was then created for the purpose of acquiring and owning the liquor store.

17.     Thereafter, Mr. Sonville liquidated the majority of the Trust's assets under management, including substantial securities holdings, to come up with the cash to pay the purchase price of $2.37 million.  And notwithstanding the entire purchase price being paid by the Trust, it only received 51% of the membership interests, with 24.5% issued to Eduardo Jr., and 24.5% issued to Eduardo Jr.'s wife.  Eduardo Jr. and his wife had no assets to contribute to the purchase of the liquor store, but, Mr. Sonville had forged a close relationship with Eduardo Jr., presumably to capture his business later down the road.

18.     Perhaps even more worrisome and perplexing was the incestuous nature of the liquor store transaction vis-à-vis Mr. Sonville.  Specifically, an entity named XL Business Brokers, LLC ("XLBB") was paid a commission in the sale in the amount of $153,750.00.  As it turns out, XLBB is owned and managed by Diana M. Espino, who is believed to be the first cousin of Mr. Sonville.  At no time was this personal relationship disclosed to Mr. or Mrs. Tarajano.

19.     To make matters worse, over the course of a few years, Merrill Lynch, again through its wealth advisor, Mr. Sonville, allowed constant and systematic cash grabs from either

5

the Trust assets or the individual assets of Mr. and Mrs. Tarajano, both under Merrill Lynch's management, albeit, with separate account numbers, to sustain the liquor store's operations.

20. By way of example, the purchase of the liquor store occurred in or around July of 2015; however, by the end of 2015, $464,000 had been transferred to Tavoalex's accounts from accounts belonging to the Trust and Mr. and Mrs. Tarajano being managed by Merrill Lynch. This was in addition to another $142,000 that Tavoalex borrowed, and which was secured by the Trust and personal accounts of Mr. and Mrs. Tarajano during this same five to six-month period.

21. By the end of 2017, the Trust and Mr. and Mrs. Tarajano had contributed more than $4.593 million towards the liquor store, inclusive of the $2.37 million purchase price, nearly draining all of the assets of both the Trust, and of Mr. and Mrs. Tarajano.

22. Finally, and based upon information and belief, Mr. Sonville, either himself and/or his spouse, held an undisclosed interest in the liquor store which resulted in payments to them of approximately $70,000.

23. Ultimately, the liquor store was sold earlier this year for a sale price of approximately $585,000, resulting in a massive loss of over $4 million to the Trust and Mr. and Mrs. Tarajano.

24. As a result of the foregoing, Mr. and Mrs. Tarajano have been left virtually penniless, with no ability to meet their monthly living expenses.

25. All conditions precedent to the filing of this action have been satisfied or waived.

## COUNT I
### Breach of Fiduciary Duty

26. Plaintiff incorporates by reference paragraphs 1 through 25 above as though fully set forth herein.

6

27.     This is an action for breach of fiduciary duty against Merrill Lynch.

28.     As explained above, Mr. and Mrs. Tarajano, due in part to their advanced age, reposed the utmost trust and confidence in Mr. Sonville and Merrill Lynch, allowing them to manage their entire life savings so they could live comfortably through their retirement expecting that their finances were in good hands.

29.     Mr. Sonville and Merrill Lynch acquired and accepted the Plaintiff's trust and confidence and undertook a duty to manage the Plaintiff's personal assets and Trust assets.

30.     As fiduciaries, Merrill Lynch and Mr. Sonville owed a duty of loyalty to Plaintiff, to put the interests of the Plaintiff ahead of their own self-interest and to refrain from exploiting the relationship for their own benefit.  This duty includes a prohibition against self-dealing, conflicts of interest, and the duty to disclose material facts.

31.     Merrill Lynch, through its agent and employee Mr. Sonville, violated its fiduciary duty to Plaintiffs in one or more of the following ways:

      a.      By failing to disclose the inter-familiar relationships between Mr. Sonville, and various parties who would benefit from the purchase of the liquor store, including, but not limited to:

            i.    Diana Espino, the owner of XL Business Brokers, LLC, who received a commission of $153,750.00 from the sale of the liquor store; and

            ii.   Mr. Sonville and his wife, who appear to have received approximately $69,000 through an entity created and controlled by them; and

      b.      By allowing substantial withdrawals from the Plaintiff's accounts under Merrill Lynch's management, including more than $464,000 in transfers to Tavoalex in just the six months after the purchase of the liquor store.

7

32.    As a result of these breaches, Plaintiff and the Trust have suffered damages in excess of $4 million, realizing this loss when the liquor store was finally sold earlier this year.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Merrill Lynch for damages in an amount to be proven at trial, and for such other relief as the Court deems just and proper.

**COUNT II**
**Negligence-Suitability**

33.    Plaintiff incorporates by reference paragraphs 1 through 25 above as though fully set forth herein.

34.    As Plaintiff's chosen and designated wealth managers and investment advisors, Merrill Lynch, through its agent and employee, Mr. Sonville, owed certain duties to Plaintiff. That includes a duty to avoid unreasonable behavior that exposes their customers' money to an unreasonable risk of loss or financial injury.

35.    That also includes the duty to perform due diligence on potential investment strategies to ensure that they are suitable for some investors ("reasonable-basis obligation"); and that they are suitable for the specific customer ("customer-specific obligation").

36.    FINRA Rule 2111, entitled "Suitability," provides that wealth managers such as Mr. Sonville and Merrill Lynch "must have a reasonable bases to believe that a recommended transaction or investment strategy involving a security or securities is suitable for the customer, based on …[among other things] the customer's age, other investments, financial situation and needs, tax status, investment objectives, investment experience, investment time horizon, liquidity needs, risk tolerance," and other information. Notably, the Rules "Supplementary Materials" make clear that "[a] member or associated person cannot disclaim any responsibilities under the suitability rule."

8

37.    Merrill Lynch, through its agent and employee, Mr. Sonville, violated these duties by suggesting an investment strategy to Plaintiff to sell the majority of his personal and Trust securities and holdings to finance the purchase of a failing liquor store in Key Biscayne. Simply put, a failing liquor store in Key Biscayne is not a suitable investment for anyone, much less the Tarajanos, who are advanced in age, retired, and living on a fixed income.

38.    As a direct and proximate result of Merrill Lynch's violation of these duties, Plaintiff and the Trust have suffered damages in the form of financial losses exceeding $4 million when the liquor store was finally sold earlier this year.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Merrill Lynch for damages in an amount to be proven at trial, and for such other relief as the Court deems just and proper.

## COUNT III
### Negligence—Duty to Know Your Customer

39.    Plaintiff incorporates by reference paragraphs 1 through 25 above as though fully set forth herein.

40.    As Plaintiff's chosen and designated wealth managers and investment advisors, Merrill Lynch, through its agent and employee, Mr. Sonville, owed certain duties to Plaintiff. These duties include a duty to "know your customer," such that wealth and investment managers learn, and maintain, knowledge about their customers, including their age, time horizon, and who has authority to act on behalf of the customer at any given time.

41.    FINRA Rule 2090, entitled "Know Your Customer," specifically provides that "[e]very member shall use reasonable diligence, in regard to the opening and maintenance of every account, to know (and retain) the essential facts concerning every customer and concerning the authority of each person acting on behalf o such customer."

9

42.     Merrill Lynch breached its duties to Plaintiff and the Trust by failing to understand Tarajanos' financial situation, by allowing Eduardo Jr. and his wife to pilfer the accounts Merrill Lynch was managing and which belonged to the Trust and Mr. and Mrs. Tarajano, and over which Eduardo Jr. maintained no control.

43.     As a direct and proximate result of Merrill Lynch's violation of these duties, Plaintiff and the Trust have suffered damages in the form of financial losses exceeding $4 million when the liquor store was finally sold earlier this year.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment for damages against Merrill Lynch in an amount to be proven at trial, and for such other relief as the Court deems just and proper.

**COUNT IV**
**Negligence—Failure to Supervise**

44.     Plaintiff incorporates by reference paragraphs 1 through 25 above as though fully set forth herein.

45.     Merrill Lynch had an obligation to supervise its employee and agent, Mr. Sonville, to ensure that his actions vis-à-vis the Plaintiff's and Trust's accounts at Merrill Lynch complied with the various duties imposed upon both Mr. Sonville and Merrill Lynch.

46.     This includes a duty to review any transactions in which Plaintiffs' (both individually and as Trustee of the Trust) securities were liquidated and then used for a private securities transaction—one which would fall outside the regular course or scope of Mr. Sonville's employment with Merrill Lynch, such as the liquidation of substantial holdings to finance the purchase and upkeep of a failing liquor store outside of the parameters of professional money management and regulatory oversight.

47.     FINRA Rules 3110, and more particularly Rule 3280, contemplate a robust

supervisory system designed to activate a red flag when substantial "selling away" in a customer's account occurs. This includes a system to ensure that there is self-reporting of such transactions by its wealth managers like Mr. Sonville.

48.     Merrill Lynch's supervisory rules were inadequate, and their maintenance and enforcement against "selling away" activities was virtually non-existent.

49.     Merrill Lynch breached this duty by failing to have in place (or, if in place, by failing to enforce or ensure enforcement of) checks and balances that would ensure this type of private securities transaction would not be undertaken without a higher level of scrutiny.

50.     As a direct and proximate result of Merrill Lynch's violation of these duties, Plaintiff and the Trust have suffered damages in the form of financial losses exceeding $4 million when the liquor store was finally sold earlier this year.   Stated differently, had sufficient supervisory rules and procedures been in place, the "selling away" of Plaintiffs' entire holdings to fund a failing liquor store would have been prevented.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment for damages against Merrill Lynch in an amount to be proven at trial, and for such other relief as the Court deems just and proper.

**COUNT V**
**Breach of Contract**

51.     Plaintiff incorporates by reference paragraphs 1 through 25, 28 through 31, 34 through 37, 40 through 42, and 45 through 49 above as though fully set forth herein.

52.     Upon information and belief, Plaintiff and Merrill Lynch executed an agreement at the time the Tarajanos' personal and Trust accounts were opened, which required Merrill Lynch to conduct itself and provide its services in accordance with applicable rules, regulations and laws.

53.     Upon information and belief, Merrill Lynch breached that agreement through the

misconduct identified in Counts I through IV, above.

54.     Plaintiff and the Trust have been damaged by Merrill Lynch's breach of that

agreement, resulting in losses exceeding $4 million.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment for damages

against Merrill Lynch in an amount to be proven at trial, and for such other relief as the Court

deems just and proper.

Dated: <u>September 15, 2020</u>

**SODHI SPOONT PLLC**
3050 Biscayne Blvd.
Suite 904
Miami, Florida 33137
Tel: (305) 907-7573
Fax: (305) 675-6461
*Counsel for Plaintiff*

By: <u>/s/ Eric M. Sodhi</u>
    ERIC M. SODHI
    Florida Bar No. 0583871
    eric@sodhispoont.com
    michelle@sodhispoont.com
    JOSHUA L. SPOONT
    Florida Bar No. 53263
    josh@sodhispoont.com
    service@sodhispoont.com
    NATHANIEL M. EDENFIELD
    Florida Bar No. 91034
    nate@sodhispoont.com